UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN P. JONES, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-494-PPS |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

John Jones, II, has appealed from an administrative law judge's denial of his application for Social Security disability benefits claiming the ALJ committed two errors requiring reversal. But I will limit my discussion to one: whether the Vocation Expert's (VE's) testimony passed the substantial evidence bar. Because I find that the VE's testimony did not amount to substantial evidence on the critical issue of whether there are jobs available to Jones, I will REVERSE the ALJ's decision and REMAND on this issue.

### Background

John Jones, II applied for disability insurance benefits on March 31, 2017, claiming that he was disabled as of October 8, 2016. [AR[1] 10.] His claim was denied initially and denied again upon reconsideration. After that, he requested and had a

---

[1] The Administrative Record (AR) in this case is found at Docket Entry # 9. Citations are to the page number in the lower right-hand corner of the AR.

hearing before an ALJ. Thereafter, the ALJ issued his written decision which once again denied Jones benefits. After exhausting his administrative appeals, Jones now seeks review of that decision.

In the written decision, the ALJ determined that Jones had the severe impairments of cardiomyopathy, sleep apnea, and obesity. [AR 12.] The ALJ also found that Jones had the nonsevere impairments of migraine headaches and narcolepsy. The ALJ also found that Jones' depression and generalized anxiety disorder were not medically determinable impairments. [AR 13.] The ALJ then determined that Jones did not meet any of the applicable social security listings for disability. Specifically, the ALJ examined listings 4.02 (chronic heart failure) and 4.04 (ischemic heart disease).

At the next step, the ALJ determined Jones' residual functional capacity (RFC). He determined that Jones was capable of performing sedentary work as defined in 20 CFR 404.1567(a), consisting of lifting and carrying no more than ten pounds at a time. Jones is able to sit for six hours in an eight-hour workday and stand or walk for two hours in an eight-hour workday. Jones can occasionally balance, stoop, kneel and climb stairs and ramps, but never crouch, crawl, or climb ladders, ropes, or scaffolds. Jones must also avoid concentrated exposure to wet and uneven surfaces, dangerous machinery, and unprotected heights. [AR 14.] I won't repeat the ALJ's description of the medical evidence included in the written decision. [*See* A.R. 12-19.]

The ALJ then posed the RFC and some additional hypothetical questions to a vocational expert (VE) who testified whether such a hypothetical person with Jones'

RFC could likely find gainful employment. The ALJ determined that Jones was unable to perform his past relevant work as a forklift operator, either as performed or as generally performed. [AR 19.] However, he found that Jones could perform the jobs of charge account clerk, circuit board tester, or eyeglass assembler, all of which exist in sufficient numbers in the national economy. As a result, the ALJ found that Jones was not disabled within the meaning of the Social Security Act and its regulations.

## Discussion

In a Social Security disability appeal, my role as district court judge is limited. I do not review evidence and determine whether a claimant is disabled and entitled to benefits. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. § 405(g). The Supreme Court has said that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). My review is guided by the principle that while the ALJ is not required to address every piece of evidence or testimony presented, he "must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful

judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Given this modest standard, the review is a light one, but of course I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "[T]he decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

Jones argues that the ALJ erred in accepting the VE's testimony regarding job numbers. [DE 12 at 15.] At the hearing, the VE testified that Jones was capable of performing three jobs, and he offered an approximate number of such positions existing in the United States. [AR 68.] The VE testified that Mr. Jones could work as a "charge account clerk" (having approximately 101,000 jobs nationally); as a "circuit board tester" (having approximately 117,000 jobs nationally); and as an "eyeglass assembler" (having approximately 103,000 jobs nationally). [*Id.*] The ALJ confirmed that the VE's testimony was consistent with the Dictionary of Occupational Titles (DOT). [AR 69.]

Things went sideways when Jones' attorney had a chance to question the VE. [AR 70.] The VE stated that he got his job number approximations from something called "U.S. Publishing." [*Id.*] However, since U.S. Publishing uses SOC codes (short for Standard Occupational Classification) instead of the DOT codes used by the Social Security Administration, the VE uses a program called Crosswalk to cross-reference SOC and DOT job codes. [*Id.*] The VE then repeatedly referenced a 25-page document

-4-

that had not been exhibited, but the VE could not remember the specifics of its contents. [AR 71-72.] When asked what type of mathematical equation U.S. Publishing and Crosswalk use to estimate job numbers, the VE stated that he did not know, but that, again, it was "in that 25-page document" which, to repeat, was not exhibited. [*Id.*] Jones' attorney objected to the numbers, and the ALJ noted the objections. [*Id.*]

The factual findings of the Commissioner, including findings as to "the kind and number of jobs available for someone with the applicant's disability and other characteristics," are "'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152, (2019). Appellate courts have recently paid significant attention to issues involving the reliability of vocational experts' jobs evidence used in Social Security proceedings. In 2014, the Seventh Circuit expressed "concern with the source and validity of the statistics that vocational experts trot out in social security disability hearings." *Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015); *see also Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). More specifically, the Seventh Circuit criticized the "equal distribution method," which estimates jobs by dividing all job numbers in a large category equally among the more specific job titles in a category. *Alaura*, 797 F.3d at 507-08. In *Biestek*, the Supreme Court considered whether a VE's jobs testimony constituted "substantial evidence" for purposes of judicial review. Biestek's attorney cross-examined the VE, asking for the source of her job numbers data, which she declined to fully disclose. *Biestek*, 139 S. Ct. at 153. The Supreme Court held that a determination about whether a

-5-

VE's testimony meets the substantial-evidence bar must be made case by case, using "markers of reliability" in the record to make the determinations. *Id.* at 1157. The Supreme Court explained that a VE's job number testimony will meet the substantial-evidence bar so long as it rests on a well-accepted methodology, and so long as the VE describes the methodology "cogently and thoroughly." *Id.* at 1155.

Respectfully, and to put it bluntly, there was nothing cogent or thorough about the VE's testimony in this case. It has left me with more questions than answers. The Seventh Circuit recently addressed a similar problem in *Brace v. Saul*, 970 F.3d 818 (7th Cir. 2020). In *Brace,* the Court found that the VE's job number estimate was "critical to [the] appeal" because the Social Security Administration has the "burden of showing that a significant number of other jobs are available to the claimant." *Id.* at 820. The Seventh Circuit noted that VEs often rely on the DOT, which has not been updated in almost 30 years. *Id.* (citing *Occupational Information System Project*, SOC. SEC. ADMIN., www.ssa.gov/disabilityresearch/occupational_info_systems.html (last visited Dec. 5, 2020). "Because the database of job titles is so outdated, an expert's methodology for connecting job titles to reliable estimates of the number of jobs for each title is especially important." *Id.*

In *Brace,* the VE stated that estimated job numbers are based on "weighting or re-weighting" allocations to get estimate of job numbers. *Brace*, 970 F.3d at 821. The Seventh Circuit found this answer to be "entirely unilluminating." *Id.* at 822. More specifically, the Seventh Circuit noted that words and phrases such as "allocation,"

"weighting," and "information that I have," without elaboration or explanation "cannot possibly satisfy the substantial-evidence standard." *Id.*

The same is true here. The VE testified that he got his numbers from "U.S. Publishing" and purportedly detailed it in a "25-page report" that he sent to the ALJ, but it was never exhibited. [AR 70.] When asked if U.S Publishing uses equal distribution to get the jobs numbers estimates, the VE stated that "I don't know exactly how they do that," but that it was "in the report." [AR 71-72.] Indeed, it was entirely unclear from the transcript of the hearing whether the ALJ ever even saw the report the VE repeatedly referenced. [*Id.*] In sum, it appears that neither the ALJ nor Jones had access to any explanation as to how job numbers were estimated.

As an initial matter, it is not only possible, but highly likely that U.S. Publishing uses equal frequency distribution to estimate job numbers within a group. *Resources and Tools for SS VE Testimony*, Jeff Truthan, SKILLTRAN, https://skilltran.com/pubs/SSVE_PreCon_Tools2016.pdf (last visited Jan. 12, 2021). Based on this information alone, this issue requires remand under *Alaura*, as the VE clearly did not meet the substantial evidence bar in blindly following the equal distribution numbers from a source without knowing how the jobs numbers were estimated. What's more, there is not substantial evidence when the VE, as he did in this case, failed to describe the methodology "cogently and thoroughly" as required by *Biestek. Biestek*, 139 S. Ct. at 1155. The VE was unable to explain how the jobs numbers estimates were calculated. Instead, the VE continually pointed to a report that was not

-7-

exhibited. The ALJ and Jones had no access to this report, and the VE was unable to verify any information found in this report at the hearing. Like in *Brace*, the VE failed to provide a meaningful answer when asked how the jobs numbers estimates were calculated. Using vague statements, such as "I don't know exactly how they do it" doesn't leave me with a lot of confidence that the conclusion is supported by substantial evidence. [AR 72.] In other words, as in *Brace,* the answers given by the VE at the hearing are "entirely unilluminating." *Brace,* 970 F.3d at 822. They are the kinds of vague answers that strike me "as the agency taking a 'trust me' approach rather than – as required by the statute and regulations – carrying its burden to demonstrate that significant employment exists in the national economy for a person with this claimant's restrictions." *Id.* at 823 (citing 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(g)).

In sum, the VE's ambiguous testimony failed to explain the methodology that he used in a way that is understandable to the claimant, let alone a reviewing court. The VE failed to give any sort of explanation at all as to how the jobs numbers were estimated. Instead, he continuously cited to a report that wasn't exhibited and stated that he didn't even know what method was used in the report. [AR 70-72.] In other words, the VE failed to cogently and thoroughly explain the methodology for estimating job numbers, and this error requires remand under *Biestek*. *Biestek*, 139 S. Ct. at 1155

The ALJ states that the VE testified to basing the answers on information gotten

from "Occupational Employment Quarterly,"[2] which relies on data from government sources and local unemployment statistics. [AR 20.] While it is true that the VE relied on information supposedly in the Occupational Employment Quarterly, the VE was not able to cogently or thoroughly talk the ALJ through the material. While the VE was able to easily explain how he[3] was able to translate the SOC codes into DOT codes using the Crosswalk program, he was at a loss as to how jobs numbers estimates were achieved. He was not even able to testify as to whether the jobs numbers were achieved through the equal distribution method. [AR 70.] The ALJ improperly allowed the VE to rely on data that was not explained cogently or thoroughly at the hearing despite objections made at the hearing.

Finally, the Commissioner argues that since the VE testified to such a large number of jobs being available, that even if only a fraction of those jobs were available, there would still be a significant number of jobs available that Jones could perform. [DE 17 at 7.] However, the Seventh Circuit addressed this in *Brace,* as well. Quoting an earlier decision from 2002, the Court noted that "[e]vidence is not 'substantial' if vital testimony has been conjured out of whole cloth." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). "An unreliable job-number estimate cannot be considered reliable merely because it is large." *Brace,* 970 F.3d at 823 (citing *Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018)). This argument fails.

---

[2] Occupational Employment Quarterly is published by U.S. Publishing, and it is likely the report on which the VE testified to relying on at the hearing.
[3] The ALJ incorrectly calls Mr. Breen, the VE, "she" throughout this portion of the decision.

On remand, the ALJ should ensure that the VE provides testimony that reaches the substantial evidence bar. Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Jones. He can raise those issues directly with the ALJ on remand.

There's one more matter: Jones requests that this decision be reversed and that he be awarded benefits. However, an outright reversal of the ALJ's decision is not appropriate, because an award of benefits "is appropriate only if all factual issues have been resolved," *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005), and where "the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). However, "it may be that the evidentiary gap [can be] filled through expanded testimony from the VE about his estimates or through some other showing that there are a significant number of jobs in the economy" available to Jones given his limitations. *Chavez*, 895 F.3d at 970. Therefore, the case is remanded for further analysis and to resolve the factual issues.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying John Jones' application for Social Security disability benefits is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

SO ORDERED on January 12, 2021.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT